case number 20-1791 General Motors LLC at all versus FCA US LLC at all oral argument not to exceed 15 minutes per side Mr. Clement for the appellants thank you your honors Paul Clement for the appellants GM and I'm going to endeavor to save three minutes for rebuttal may it please the court the district court plainly erred in dismissing this RICO action for failing to allege proximate cause without even providing leave to amend in reality the original complaint more than adequately alleged that GM was the direct and intended victim of FCA's scheme to bribe officials of their shared union to inflict harm on GM this is not a case where GM is simply complaining that FCA brought its union to reduce FCA's own labor costs which in turn allowed it to lower its prices which in turn caused GM's competitive injury instead GM has alleged that it is the intended target of FCA's efforts to corrupt their shared union to raise GM's labor costs directly if GM can prove those allegations there's nothing indirect about GM's injuries it was the direct and intended target of the scheme and GM dealt directly with the entity that FCA was alleged to have controlled in violation of 1962b if FCA had brought not the company's shared union but their shared regulator NHTSA and they had bribed NHTSA not just to go easy on FCA but to go hard on GM it would seem clear beyond cavil that GM could bring a civil RICO action to recover for the injuries inflicted by that scheme it's a question isn't it of directness how how was that directness alleged so so give me in your plobbery if you talk about just increased labor causes costs so give me generally the GM so thank you your honor i mean i would say ultimately i believe the test is proximate cause which is informed by directness i don't know that there's a freestanding directness test but that quibble aside i would say that you know there's really sort of two phases to what went on here and in the first phase in the context of a union that is typified by pattern which i think is important because in this industry generally if you get a concession everybody gets the concession so in the context of that industry specifically in the first phase before the 2015 pattern bargaining process FCA obtained benefits for itself through bribes and we allege equally secured through bribes the commitment from the union that comparable benefits would not be passed on to GM and what what do you allege that would show that that was the scheme so to speak and the assurance that comparable benefits would not be passed on to GM i'm struggling with the mechanism because the idea could have been your opposing counsel argues well they just wanted to bribe the UAW to give them benefits and surely they hoped that it would hurt GM but the purpose was to benefit themselves we understand that your honor and we allege specifically even in the unamended complaint that they intended these bribes not just by the union's agreement to lower FCA's costs but to essentially refuse to pass on those benefits to GM so we allege that originally and then of course in our proposed amended complaint which we don't think you need to get to but if you were to get to that we really provide what i think is the missing link which is we allege that they have extended their bribery scheme to the specific UAW official Joe Ashton who was the UAW official for the GM account and to me i mean again we're still at the allegations stage so we haven't had any discovery but i think that allegation absolutely ought to seal the deal for us because if they're simply securing benefits for themselves and not paying to get those benefits not passed on to GM there is no reason they should be bribing the UAW official for the GM account and the way UAW is set up i mean they have sort of a separate little division for the Chrysler account a separate division for the Ford account and a separate division for the GM account and that seems to me to be such a powerful specific allegation it's as if we have caught FCA or so we allege making bribes not to NHTSA in general but to the specific NHTSA official responsible for auditing what do we do what do we do with it seems to me they're intervening actors the the workers are the bribes hurt the workers to the extent that there are concessions that they end up giving up or and or they are the ones who ultimately approve the CBAs so why don't they in some break the chain of causation with but or are the ones that are able to vindicate their rights so your honor we don't think they break the chain of causation and we think that i mean you know they may have it's theoretically possible as to the pre-2015 allegations that they might have their own theoretical action but i don't think it's not the same action our injuries aren't of theirs and then when you get to 2015 uh then the you know our allegations are essentially FCA conspired with the union to raise the labor costs of everybody including GM so as to that 2015 allegation the union's not even injured so we're the only people who are in a position to bring the action but just to get to the nub of the question i don't think the supreme court's say that nobody else can be injured at all and i i point to specifically bridge which i would point to as it's the last actually the last supreme court majority opinion on this issue because my friends on the other side want to rely on hemi but that's just the plurality opinion as to proximate cause and in the bridge opinion specifically i think two things are yeah the lower court said that this that the county was not injured at all here and the defendants quibble with that but that's not really important because if the county may have been injured but only in a different way in a more speculative way we think we're very analogous to that but we also think we are absolutely directly analogous to the hypothetical that justice thomas used in his opinion for the court to prove the point because in addition to actual facts that were before the court of course he talked about a hypothetical where a company made misrepresentations to the shared customer pool of it and its rival you can imagine a company basically saying hey my rivals closed for covet and telling all their customers that and the court said that the rival could bring an action even though um and what of course the court was focused on there is the fact that the rival could bring the action even though it didn't directly rely on the misrepresentations the shared customers did but i think if you think about that hypothetical there's no question those customers are also injured almost in the exact way the union is injured here which is they presumably paid too much or they went to an inferior supplier of the product because of the misrepresentations but because the whole point of the scheme was to mulch the rival then i think that that is why the court under those circumstances used that you know again it framed its own hypo so it picked that i think is a relatively obvious case where a rico action could go forward and we think that's really directly analogous to this case so um mr clement do you think that uh hemi i know hemi is just a plurality opinion chief justice roberts seems to shut down the intentionality line in response to um justice bryars dissent justice thomas who wrote bridge joins justice roberts do you think hemi isn't that the plurality isn't the controlling opinion under marx is that the theory like what that why doesn't hemi control i i think judge larson if you apply the marx analysis to the hemi decision there is no question that justice ginsburg's opinion controls she wrote that short three paragraph opinion and she specifically said in it and i'm quoting i join the you know i i concur in the judgment quote without subscribing to the broader range of the court's proximate cause analysis end quote so if you do the marx analysis on the hemi opinion there is no question that you get to the justice ginsburg opinion as being the narrowest of the opinions and there is no question it provides zero help for my my friend on the other side because justice ginsburg relied on the fact that the city of new york couldn't collect taxes directly from hemi and the fact that there wasn't a cause of action under the jenkins act yeah so that that does them no good and i do think this is an easy case for the marx analysis because what she's specifically not agreeing to is the broader pronouncements in the plurality opinion about proximate cause which is the precise thing that the district court and my friend on the other side relies on yeah so i and and i would also say that um you know the wallace opinion of this court is not a plurality yeah but we can't rely on wallace can we i mean we have a a prior opinion i think it's called perry that is inconsistent with wallace i mean i understand the district court probably couldn't reject wallace but i'm not sure we're bound by wallace because we have this perry case so i'd have to quick double check your honor i think perry is subsequent to wallace so and and they're actually 2003 and wallace is 2013 yes so i think perry would be the binding opinion i would also note there really isn't any tension between wallace and perry i think they're both written by judge cole in fact um if memory serves and so all perry said is and i think absolutely correctly is the fact that the underlying rico predicates or conduct was intentional doesn't matter and of course that only makes sense i mean you know the the plaintiffs there were trying to say well this is this is an intentional essentially tort not like a negligence style tort and that doesn't make any sense because almost all of the rico predicates require intentional conduct so a line that simply said we're going to apply a different proximate cause test when the predicates involve intentional conduct would make no sense so perry rejects that it is consistent with wallace we don't like i don't think we need you to rely on wallace because we think it's good law but my point is i think if you put wallace aside for a second and just look at anza and bridge which are the only majority opinions i think the law that clearly emerges is the ultimate test is proximate cause directness matters and so does foreseeability at least to the extent that you were talking about and this is the line that justice thomas used multiple times in bridge if the plaintiff is the intended target of the scheme then it's an easy case for directness and could i make just one more point on directness which is i think this is a particularly easy case for directness with respect to the 1962 b count and i do think that you have to look at the various counts separately in fact if you go back to anza anza remanded the 1962 8 count even though it poured out the 1962 c count on proximate cause let me ask you quickly on on um on bridge that you were referencing the but the court goes on to say um and there are no independent factors that account for the injury there's no risk of duplicative recovery by plaintiffs removed at different levels of injury from the violation and no more immediate victim is better situated to sue how do you fit within those qualifications of foreseeable and natural consequence well i think it's most clear your honor with respect to 2015 in the pattern may i finish my answer oh please i think it's most clear with respect to 2015 because there our allegation is that gm rather fca conspired with the union to impose an agreement that had unusually high labor costs so those allegations don't injure anybody but gm the union that it wasn't that the double where the um uaw employees rejected it rejected the offer contract and then came back and the next contract of course was richer but if there had been a scheme why weren't why wasn't the vote of the union an intervening controlling factor it wasn't your honor for the following reason the the rank and file you know sort of did not approve the first sweetheart deal um because they weren't you know you know that fca bribed you know essentially a lot of people in the leadership of the uaw but couldn't bribe everybody in the rank and file which isn't that the classic intervening cause no because we're not we're not we're injured by is the ultimate deal that the uaw and it's it's the second deal that injures us we're not injured but you did have some control in the second deal because you negotiated it down didn't you but but we negotiated it down in a way that you know i the way i think about that your honor is we mitigated our injuries in negotiating it down but we were clearly i mean if this if we are allowed to prove our case what we will prove is that but for this bribery scheme we would have gotten much lower labor costs and that's not just a wing in a prayer that's because we were negotiating this is the way the pattern bargaining works we were negotiating with the union on our own before they picked a definitive bargaining partner for the pattern bargaining and we got it we were negotiating towards a much better deal than we ended up with and why did we not end up with the better deal we were negotiating because fca conspired with the uaw to get a a deal that was very disfavorable for us we alleged for the specific purpose of injuring us directly and that agreement was ultimately approved yeah it took them the second time but it was ultimately approved by the uaw rank and file and that's the agreement that raised our labor costs and so if we can prove that and connect the dots then i think we actually have a fairly straightforward damages case where we just have to show the delta between what we would have gotten uh but for the corrupt scheme and what ended up with and i'm sorry why would your rank and file have approved the deal you pre-negotiated this deal with general motors it was a better deal than the deal that fiat chrysler fiat chrysler their workers were in a worse bargaining position they were weaker they rejected the deal you think you could have gotten your rank and file which had more bargaining power would have approved this deal why is that like if if you don't have a deal it doesn't matter if you have a deal with uaw the rank and file still has to approve it right yes but i think that i mean first of all i don't know that the way that the approval works is it's sort of agreement by agreement but in all events what i would say is we think that um we would have gotten approval from the union who would have i and this was the best deal they're going to get so if i can take one step back i know i'm over my time but i want to give you a complete answer the way that economists who study pattern bargaining have concluded independently is that the rational thing for a union to do is to negotiate with the employer who's in the strongest position and then try to use that to get a better a comparable deal with the weaker employees and employers right so one of the things that looked so suspicious not just to us but to neutral economists watching the industry here was the fact that the union picked fca to do this deal now presumably the uaw rank and file has a sense of this too so when there's a deal that the leadership has negotiated with fca they may be particularly suspicious of that because they know that fca has the lowest labor costs going in and so the rank and file may think i'm suspicious about this because i think i can get a better deal with gm if you consider the counterfactual world where we're picked as the bargaining power partner and we come up with the deal based on our stronger position our higher labor costs i think it's going be much more likely that the union when they're presented with that deal is going to be like yeah this is the best deal we can get here's what i'm struggling with it seems like much of your argument it uses the words of speculation i think this is what economists believe um and your opposing counsel argues that it does not rise to the level of stating a claim because you are speculative and you you are inherently speculative in claiming we should have been the initial bargaining partner we would have been the initial bargaining partner and then this is what would have happened even though as anyone who does labor law knows um the reactions of the union may surprise people and and what the body wants what the rank and file wants may not necessarily be what the economists suggest is the best thing how do you move your claim with these intervening rights of others to either move it forward or cut it off how do you move that claim to the level of factual specificity necessary to state a claim well your honor i mean you know ultimately i think we get to a level of greater specificity eventually by getting some discovery but i don't think there's any lack of spec of specificity or undue speculation in what we allege we allege very specifically that they with their bribes were in a position to inflict higher labor costs on us that's what they paid for now we may or may not be able to prove that but that's what we allege and if we can prove that that is a direct line we also allege that they controlled the union and if you understand that that's the heart of our 1962b allegations there's nothing indirect about this we were dealing with the controlled entity which is the uaw directly to our detriment i don't think you can be any more direct than that and that is essentially equivalent to the 1962a allegations that the court even in anza let go forward because thank you you will have your rebuttal time thank you your honor mr holly is that yes your honor may have pleased the court holly for appley's fca us llc and fiat chrysler automobiles nv which is now known as stilantis nv your honors there is a straightforward basis for affirming the well-reasoned decision of the district court in this case which dismissed gm's complaint with prejudice gm alleges two sets of predicate acts to support its rico claims and i want to address them separately the first set of predicate acts involves payments to certain employees of the united auto workers that were facilitated facilitated by certain fca employees and gm alleges that these prohibited payments under section 302 of the labor management relations act are what caused the uaw to give various benefits concessions and advantages to fca in the negotiation implementation and agreements the problem with this however is as the court explained in both hemi group and anza the actions that allegedly caused the harm to gm are distinct from the actions that constitute the predicate acts the harm suffered by gm as mr clement just said was caused by the collective bargaining agreements with the united auto workers which is not a party to this case and it is those agreements that gm says caused it to have higher labor costs the labor law violation the prohibited payments did not dictate the terms of gm's collective bargaining agreements those agreements were in very substantial part the independent actions of the uaw the members of the uaw who had to vote whether or not to ratify them and by gm itself council what about the arguments and the allegations about that um the fca bribed the uaw to deny concessions to gm well actually your honor sessions are denied how would the workers be harmed by that the workers would be benefited by the denial of concessions so so the the workers of fca or the workers of gm your honor all of the uaw well so because if if gm says i could have gotten concessions but you bribed uaw to deny concessions to me some of which they were granting to fca now how what is the intervening force in that deal well the intervening force in that deal your honor is that so even taking the allegations in paragraph 71 of the complaint at face value right the allegation is that there was not only a payment to the union in order to give fca benefits for itself which is of course is what has alleged in the complaint but in this paragraph and sort of offhand way it says quote at the same time through its bribery fca ensured that while these special advantages were conferred on fca the same or similar advantages were not provided to at least gm despite it there's the drugs there's the wco and the gm wanted gms all of those gm alleges were denied just to gm well actually your honor if you look at paragraph 72 through 79 it doesn't quite say that what it says is that gm did not get the same deal but there are many intervening reasons why that might be true for example yeah well what they allege in 75 is as fca group had directed through its bribery to certain corrupt uaw officials these unique advantages such as c wcm were not made available to gm i mean that's a connection right there you bribed you got it we don't so you still have the problem your honor as as was pointed out in the earlier argument that even if that's all true you have the notion that there was a deal agreed to by the united auto gm there are many many factors that go into something as complicated as a collective bargaining agreement the membership of the uaw rejected that deal um it had to be sweetened um then they go to gm under i understand that let me interrupt just to make sure that you're formatting your response to some of the other concessions that i'm talking about either the um the formulary for drugs the ucm versus gms um and particularly the cap on temporary or tier two employees which is a substantial difference in cost include those in your response please i don't think that that i was intending to your honor and i still think that the proximate cause case as the district court pointed out is very very difficult because you have all of these intervening events between the payments which allegedly and there's a but for cause problem here because general holyfield at the uaw died in april of 2015 mr yacobelli who was the you know head sort of person on the fca side left fca in june of 2015 and the negotiation of the 2015 collective bargaining agreement didn't begin until september but putting aside that sort of but for causation problem even if these payments resulted in fca being put in the position to be the lead negotiator you still have you still can't show that the payments were the direct cause of these other events because well we're in the we're at the at the motion to dismiss stage so the question is what have they adequately alleged have they failed to adequate adequately allege that direct con that direct construct absolutely sorry your honor i don't go ahead please no i didn't mean to interrupt you um absolutely they've failed to allege it that there there is nothing there is nothing necessary about giving a good deal to the uaw uh that relies on these prohibited payments it's exactly the sort of analysis is in the anza where the court said what hurt the plaintiff was that its competitor lowered its prices but the competitor could have lowered its prices for a whole range of reasons having nothing to do with the fact that it wasn't paying the state of new york sales tax mike so if if in anza they had alleged in the complaint that they lowered their prices to gain market share intending to hurt their competitor and in fact the scheme had succeeded would that have been okay in other words i don't i see in anza there's this possibility that all of the that they could have done it for other reasons but in this case there's a specific allegation that the bribery was done to hurt gm and it seems like it did hurt gm so why isn't this just an intentional tort and yes the causation chain may be a little bit attenuated but don't we relax the the causation in an intentional tort situation where you actually accomplished what you intended to accomplish i think your honor the justice kennedy addressed the court's question in specifics in anza he says the second circuit reached the contrary conclusion apparently reasoning that because the ans is allegedly sought to gain a competitive advantage over ideal it is immaterial whether they took an indirect route to reach their goal a rico plaintiff cannot circumvent the proximate cause requirement simply by claiming that the defendant's aim was to increase market share at the competitor's expense that is on all fours with what gm is claiming here and and this is not a tort case this is a rico case brought by an economic competitor of fca and the cases make very clear that the proximate cause requirement in those sorts of cases is applied very strictly i also want to talk to your counsel the problem i keep coming up with coming up against in your theory is that what it means is if you're an intentional actor and you are good at it right you're i mean the whole thing and rico's aimed at organized crime so like that's its core so you're really good at organized crime and you're really good good at this so you set up your dominoes in this way and you're really good at it so you know that you push the first one it's gonna fall and it's intentional like you've thought through all the things and it works you're not liable and that just seems weird if you're if you have a simple minded scheme well then you just have the first domino and all you're aiming at is the second one well then there's liability but if you have a complicated scheme more easily less likely to be detected well then you you're not liable it just seems weird to me well your honor i i think that you know the cases the supreme court precedents if you look at holmes holmes talks about the fact that the rico proximate cause requirement is predicated on section four of the clayton act you know which deals with you know directness of injury in the antitrust context and if we look at the three holmes factors in this case gm does not fare well at all which is just further confirmation that it's it's claimed injuries are very indirect i mean there are first more immediate victims of these prohibited payments are not the workers who not only had an incentive to sue your honor but did we now have as of this weekend but here's the deal so if if general if if fiat chrysler had bribed the uaw so your theory is fiat chrysler bribed the uaw to harm fiat chrysler workers help general motors workers which harms general motors so they lose but if fiat chrysler instead had bribed the uaw to help general motors workers well now there's no victim the next victim in line is general motors management the company so now they can recover correct isn't that kind of just odd i don't think so your honor i i think that you have to show a direct causal connection not between some broad-based scheme uh which which mr clement seemed to be suggesting but between the predicate acts which here are the violations of section 302 of the labor management relations act and these false tax norms which didn't get mentioned this morning for good reason um and and the alleged harm which is increased labor costs but there are too many steps in between payments to the uaw even if one could accept the proposition that those payments are what dictated the the positions taken by the uaw in bargaining with gm you know there you know at a minimum there are the decisions by the rank and file members of the union about whether to accept the deals that are offered to them um and you know i i take the point may i interrupt and add something to that um how did how did the two-tier and temporary workers fit into that analogy because um the you are having the employment of the numbers of those types of employees is what really is what gm is alleging really impacted them does that track with your argument yes your honor because how so because if in fact there was some corrupt deal between the uaw and fca that entitled fca to use more tier two workers who got paid substantially less than tier one workers and a deal to let fca use more temporary workers who are also much less expensive than regular tier one workers then the most immediately harmed people were the members of the uaw who got paid less money than they otherwise would have i mean the same is true this allegation that the union soft-pedaled grievances and health and safety issues raised by fca workers if that really happened if that was the consequence of these prohibited payments which i do not accept but if it did they're taking it as as a given uh then the people who were hurt were not gm but members of the union uh who otherwise didn't have their seriously uh your honors i i see that i've run out of time i um and i would like to address the motion to amend but uh i don't think i have an opportunity so i will you can stand on your briefing thank you your honor judge now bandian can i ask a quick question um you said that the some workers have sued now to vindicate certain rights um have they sued over the deal that was with respect to fca the allegations of these complaints your honor are that the prohibited payments were unfair labor practices um and that they hurt the workers there is no allegation as of course there is none of the criminal cases that gm had anything to do with the prohibited payments or was affected by them in any way well one quick follow-up if you're fca and you are allowed to have um more concessions i'm trying to work this through and you are compared to gm then the gm workers that are employed have fewer opportunities to be either or a temporary worker so the gm employees were somewhat benefited in that they kept their historic status right but gm itself was harmed because fca had a large number of tier two and a large number of temporary employees that gm understood was going to be capped and then was not so help me work through that logistical problem but i think your honor if you're looking at the directness of injury analysis in anza and in homes you're still talking about the most directly injured people being the workers um who got paid less money or in in your hypothetical if i understand it correctly people at gm who i i wasn't entirely sure about that question let me explain i i don't think the gm employees were harmed in the same way the fca employees were harmed because the fca was allowed to have two tiers of lower paid employees temporary and tier two so they got paid less at fca at gm gm retained its historical percentage of full pay employees and the lower historical um potential or percentage of tier two employees and temporary employees assuming that the cap that had come through bankruptcy would be reimposed and it in fact was not so wasn't that gm that was harmed by that i don't think so your honor i mean the mere fact that that gm employees may not have been adversely affected by this alleged corrupt scheme to let fca have more tier two and more temporary workers doesn't change the homes analysis or the anza analysis that the most directly affected party of by virtue of the prohibited payments were the workers at fca you know we can you can always go out you know further steps into the you know the proximate cause ether but but if you're focusing on what the supreme court has said is the important factor which is who is the most directly affected what is the first step in the chain of causation that is the fca workers your honor and and what happened to the gm workers you know that is really no consequence i would say yes one more quick question it could actually be either council to answer this question it doesn't really matter but where is ford in all of this like i just it's a it's just a question i have well well that's a very it's a very good point your honor because it's also a homes factor that other people um under the theory uh asserted by gm could also sue and then you'd have the risk of multiple recoveries and apportionment of damages if gm is a complete bystander to these prohibited payments as standing under rico to sue then so ford and toyota and honda and volkswagen and all of their tier one suppliers and all of their dealers that's exactly the sort of thing that the supreme court in home said you shouldn't allow it to happen you need to have a direct causal connection to stop half the world from having standing under rico which was never intended to be some generalized federal law of torts it has very strict requirements in order to allow someone to prevail which is why most rico claims are dismissed it's very hard to meet this cause council do you have any you need a follow-up judge larson no no thank you judge now bandian no um mr clement thank you your honor just a few points in rebuttal including ford um you know first i i'd focus on anza case which my friend on the other side relies on this is so much more direct than anza and i think in a way it explains why ford hasn't sued and why there's no risk of ford suing the what i would suggest this case would be more like anza if in anza the alleged conduct was not just fraudulently not paying sales tax but was bribing the local tax officials to audit the i don't think it would have remotely been dismissed for lack of proximate cause or directness and that also helps explain why ford's not suing here fca had an obsession with gm they wanted to take it over in a merger and therefore they had a distinct incentive to injure gm and not just benefit themselves to the detriment of all other competitors we alleged so here's the question i think you clearly um clearly allege that but here's the question that your opposing council raises if your arguments open rico to the type of claims that you um have alleged then why don't your arguments open rico to a claim by ford and other suppliers um in the same way your honor why doesn't that just make rico expand exponentially to a whole variety of harmed entities the answer your honor is because it is not just the fact that ford that fca benefited itself and all other entities subsequently were hurt it's the allegations that they had a specific intent to harm gm and that's going to be very rare to allege and this brings me to another point i was hoping to make which is another aspect of bridge which i think is very helpful is the discussion in and around footnote seven of justice thomas's opinion where he points out that the proximate cause theory we're relying on here is the proximate cause theory that underlies essentially every intentional tortuous interference with contract or tortuous interference with commercial advantage it's not some exotic multi-step process it is basically our competitor didn't just try to compete better but they specifically targeted us in an unfair way and that's that i think that's important the last point here is the before you get to your last point here's my my concern about that in bridge is it does say that it does talk about foreseeable and natural consequences but but rico is not a general tort remedy so it goes on to say the three categories that we spoke about earlier the independent factors accounting for the injury duplicative recoveries by plaintiffs removed at different levels and no immediate victim is better situated to sue those make rico different from general tort remedies so why why do why does your remedy fit rico and without these problems so judge france i'd like to answer that and then get to my last point which is actually related helpfully the the first of all i just think if you focus in on the allegations here there i think we actually fare quite well under those other factors that bring us well within rico because and you're colloquially with my friend on the other side brought this out if you focus first on the pre-2015 allegations about the bribes specifically to deny concessions to gm nobody else is injured by those allegations other than gm and when you pressed my friend on those allegations he kept on wanting to talk about 2015 but in the pre-2015 context we are talking about concessions that are being given outside the normal four-year pattern bargaining process where it's a direct line we want those same concessions we're not getting them we allege because the uaw officials have been brought there's nobody else my last point is even if as to some of the allegations somebody else is incidentally injured in a different way that can't be enough to pour us out under rico and the reason is that the most classic imaginable rico violation is a so-called bust out where organized crime infiltrates a legitimate business in an effort to defraud the creditors of the legitimate business every time that happens the equity holders in the legitimate business are also going to be injured but i can't imagine that the creditors of the infiltrated legitimate business don't have the classic rico cause of action so what i think homes is getting at and i think it goes back to it all being based on the clayton act you can't have like an indirect purchaser claim where you're bringing the exact same injury that somebody else has but if the union is injured in some different way and we are the direct and intended target of the scheme we still have an action under the law thank you your honor well we thank you both your briefing is excellent your arguments were excellent and this is a complex area so having that is an advantage to us the case will be taken under advisement and an opinion issued in due course you may call the next case